R. Terry Parker, Esq.
Law Office of R. Terry Parker
43 West 43rd Street, Ste. 275
New York, New York 10036-7424
Tel: (212) 859-5068
Email: terry@rterryparkerlaw.com

June 12, 2023

**VIA ECF**

Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **Wozniak v. Warner Bros. Entertainment Inc./DC Comics v Wozniak
      Case No.: 1:22-cv-8969 (PAE)**

Dear Judge Engelmayer:

I represent the plaintiff and third-party defendant Christopher Wozniak ("Plaintiff") in the above-referenced lawsuit against the defendant Warner Bros. Entertainment Inc. ("Defendant") and the third-party plaintiff DC Comics ("DC Comics"). We write seeking a pre-motion conference in effort to resolve a discovery dispute between Plaintiff and Defendant.

### A. Background of the Parties' Discovery Dispute

This is a copyright infringement case in which Plaintiff asserts that Defendant's 2022 film *The Batman* (hereinafter "Defendant's Movie") infringes Plaintiff's story titled "The Blind Man's Hat" and also known as "The Ultimate Riddle" (hereinafter "Copyrighted Work"). On numerous occasions, starting in the 1990's through 2002, Plaintiff submitted his story to DC Comics as a treatment for a potential graphic novel about the Batman character. In addition, Plaintiff also submitted his story as a film treatment to Michael Uslan, the producer of Batman movies and other DC Comics movies, after meeting Uslan at the NYC Comic Con in 2008. Having no response from Mr. Uslan, and having had the story rejected by DC Comics, Plaintiff was understandably shocked to see that Defendant's Movie, released in 2022, was substantially similar to his story, including its copying of his original expression of the Riddler as a serial killer and mass murderer who seeks to bring about Armageddon/Judgment Day in order to solve the ultimate riddle of life after death, as well as many other elements in Defendant's Movie that are strikingly similar to elements in the Copyrighted Work.

On February 15, 2023, Plaintiff served his First Set of Requests of Production, a copy of which is attached hereto as Exhibit A. Relevant here, Plaintiff sought *inter alia* "[a]ll drafts and versions of the screenplay or script of Defendant's Movie, *see* Request No. 7, documents sufficient to demonstrate the dates of completion of all versions of the screenplay or script of Defendant's

Movie, *see* Request No. 8, and all documents concerning the story-line, plot, structure, and/or character relationships in Defendant's Movie referencing [elements of the Copyrighted Work]." *See* Requests No. 9-35. In addition, Plaintiff sought "[a]ll communications between Defendant on the one hand and [the writers of the screen play of Defendant's Movie] on the other hand regarding [the role of various characters that appear in Defendant's Movie and the Copyrighted Work]. *See* Request Nos.41-48. Request Nos. 1-35 and 41-48 are set forth verbatim in Exhibit A and referred to herein as the "Outstanding Requests."

On March 17, 2023, Defendant asserted a list of boiler plate objections in response to the Outstanding Requests, a copy of which is attached as Exhibit B. The parties have met and conferred by telephone on two separate occasions and have been unsuccessful in resolving his dispute. Defendant's refuses to produce documents responsive to the Outstanding Requests, other than the 2018 draft screenplay of Defendant's Movie.

### B. The Documents Sought are Relevant and Proportional

Plaintiff may obtain non-privileged documents that are relevant to his claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Relevance under Fed. R. Civ. P. 26(b)(1) "is an extremely broad concept." *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)). Proportionality depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. 26(b)(1). However, it is Defendant's burden to show these factors should curtail discovery. *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1, 2022 U.S. Dist. LEXIS 128127, at *3 (S.D.N.Y. July 19, 2022)("Once the moving party has shown that the information sought is relevant, the burden shifts to the opposing party to justify curtailing discovery.").

The documents sought by Plaintiff are relevant. To satisfy a copyright infringement claim, a plaintiff must show "actual copying." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir.2003). Actual copying may be established "circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material . . . and that there are similarities between the two works that are probative of copying." *Id.*[1] Documents responsive to the Outstanding Requests are relevant to the issue of access, including documents that pre-date the 2018 screenplay which are relevant to whether or not the elements in Defendant's Movie that similar to elements in the Copyrighted Work originated not from the writers of Defendant's Movie, Matt Reeves, Peter Craig, and Mattson Tomlin, but from the Defendant and Uslan.

---

[1] In addition, although not at issue here, actual copying can be established "if the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.'" *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995). To prove that similarities are striking, claimant must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source. *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 330 (S.D.N.Y. 2021).

Indeed, mere months after Plaintiff provided Uslan with the Copyrighted Work in 2008, Defendant is reported to have suddenly pushed for the Riddler to be the chief villain in the Christopher Nolan Batman movie *The Dark Knight Rises* (2012).[2] *Movie Talk* at Yahoo.com reported: "'*Rises*' screenwriter David Goyer recently revealed to *Empire* magazine (print edition, via What Culture) that the studio essentially thrust the idea of DiCaprio as the Riddler upon he and Nolan after the release of 2008's 'The Dark Knight'. . . around the same time Nolan was pitching 'Inception' to them, in which DiCaprio starred."[3] Another reporter similarly claimed: "We've gotten word from a reliable inside source with a studio casting grid that The Riddler is listed as a character for Chris Nolan's highly anticipated to the sequel to The Dark Knight, which is still called Batman 3 at Warner Bros."[4] In addition, prior to Defendant hiring Matt Reeves as writer and director of Defendant's Movie, Defendant's Movie was being written by Ben Affleck and included an expression of the Riddler that would have tied into Defendant's film *Justice League 2*, which was never finished but uses storyboards from DC Comics that depict a Riddler character who is strikingly similar to the Riddler in Plaintiff's Copyrighted Work, and was, as in Plaintiff's Copyrighted Work, attempting to solve "The Ultimate Riddler" or the key to life itself in an apocalyptic setting. This *Justice League 2* Riddler scene was said by Director Zack Snyder to be a continuation of the Ben Affleck film *The Batman,* the very same film which Matt Reeves was brought on to direct and finish in 2022.[5] Accordingly, documents concerning the story-line, plot, structure, and/or character relationships in Defendant's Movie that pre-date the 2018 draft produced by Defendant as set forth in Request Nos. 9-35 are relevant to Plaintiff's claim that the writers of Defendant's Movie had access to the Copyrighted Work through Defendant and Uslan and that the original expressions of the Copyrighted Work found in Defendant's Movie did not originate with the writers of the 2018 screen play of Defendant's Movie, but originated from Plaintiff's Copyrighted Work, which Uslan obtained from Plaintiff and Defendant obtained from Uslan. Similarly, the communications between the writers and Defendant regarding the characters and their roles in Defendant's Movie are relevant to Plaintiff's claim that his unique expressions of these characters did not originate with the writers of Defendant's Movie.

The burden of production is proportional to the needs of the case. The issues at stake in the action concern are clearly important as the discovery is relevant to elements of the cause of action. The amount in controversy favors production because, while Defendant has yet to produce discovery showing the revenues of Defendant's Movie, it is reported to have earned $600 million by March 21, 2022, less than a month after its March 4th release in 2022.[6] Only Defendant has access to this discovery and Defendant's resources favor production.

Respectfully submitted,

/R. Terry Parker/

cc: All Counsel of Record via ECF

The Court has received plaintiffs' letter. Defendant's and third-party plaintiff's response(s), which should conform with the Court's Individual Rules, are due 6/16/23. SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge
June 13, 2023

3