# EXHIBIT D

DC FORM #E 102 (Rev 6/92)

Date: 12/2/92

DC Inv. No.: G-8837   33248

Artist: CHRIS WOZNIAK
(Insert name of company here if contracting party is incorporated)

Vendor No.: _____

Employee: _____
(Insert name of individual who will be performing services for contracting party if contracting party is incorporated.)

Address: 151-03 20TH AVE WHITESTONE NY 11357

This instrument shall constitute the understanding and agreement ("Agreement") between Artist and DC Comics, 1325 Avenue of the Americas, New York, NY 10019 ("DC") with respect to the following (hereinafter the "Work"):

Services: ☐ Cover   ☐ Painted Cover   ☐ Sketch 22 000 1200 20 10   ☒ Pencils 22 000 1200 20 00
☐ Layouts 22 000 1200 20 30   ☐ Inks 22 000 1200 20 20   ☐ Finishes over Layouts 22 000 1200 20 40

Book or Series Name: SCI QUARTERLY   Story Title or Issue No.: SPEED OF LIGHT

Pages: 13   Per Page Rate: $120⁰⁰   Total: $1560⁰⁰

1. DC hereby engages Artist to produce the Work, and Artist hereby accepts such engagement at the Per Page Rate and agrees to render the Services subject to the terms and conditions of this Agreement.
2. In consideration of Artist's rendering the Services, DC shall pay Artist the Per Page Rate for the Pages of Work (each Page being a page or cover of a standard comic book story and further described above as either Pencils, Inks, Sketch, Layouts, Finishes over Layouts, and/or Covers) within ten (10) business days after acceptance of the Work by DC.
3. Artist shall produce the Work in accordance with DC's instructions and editorial standards and shall deliver the completed Work to DC within thirty (30) days after the date of this Agreement, after which date DC shall no longer be obligated to accept the Work or make payment for it.
4. After delivery of the completed Work, Artist shall make any revisions of the Work requested by DC within the time specified by DC for such revisions.
5. No portion of this Agreement shall be interpreted to limit DC's right to alter the Work in any way, including adding pages to or deleting pages from the Work solely at DC's discretion, and without obligation to pay for any pages beyond the number specified above. Artist further acknowledges that DC has the right, in its sole discretion, to assign any other artist or artists to make changes in the original Work and to have work described as "Pencils" finished by an artist rendering "Inks," and the right to have work described as "Layouts" finished by an artist rendering "Finishes Over Layouts."
6. For any Pages of the Work reprinted in any book or magazine published by DC for distribution and sale to the public after initial publication (excluding additional printings, which shall not be considered reprints), DC shall pay Artist a sum of $32 if Pencils, $23 if Inks, $28 if Layouts, or $27 if Finishes over Layouts, as well as royalties under DC's standard royalty policy, as set out in paragraph 8.
7.(A) The Work created hereunder has been specially commissioned by DC for use as a contribution to a collective work and constitutes a work made for hire as that term is used in the United States Copyright Act of 1976. Artist acknowledges that Artist has entered into this Agreement before commencing performance of the services Artist has been engaged to perform hereunder. If the Work is deemed not to be a work made for hire, then Artist hereby assigns to DC all rights in the Work including copyright and trademark rights and all other rights to exploit the Work in all media now or hereafter existing throughout the world in perpetuity. Upon DC's request, Artist shall execute any additional documents necessary to evidence this assignment, provided any such document shall not require Artist to assign any rights other than the rights assigned hereunder. DC shall also have the right but not the obligation to use Artist's name, likeness and biographical information in connection with the Work, and the advertising, publicity and promotion thereof.
   (B) Artist acknowledges that the Work shall be derivative of preexisting material including, without limitation, the name and pictorial and literary representations of fictional characters, companies, places and things (the "Preexisting Material"); that DC owns or otherwise has rights in the Preexisting Material; and that Artist would be unable to produce the Work without the Preexisting Material. Artist further acknowledges that Artist shall not have, acquire or claim any right whatsoever in any of the Preexisting Material and shall not have the right or privilege to use any of the Preexisting Material except as provided herein or as DC otherwise consents in writing.

*(See reverse side for continuation)*

ACCEPTED AND AGREED:

By: X _[signature]_   By: _[signature]_
Artist's Signature (If Artist is incorporated, Corporate Officer's Signature)   DC Comics

Company Name: _____   and Corporate Officer's Title: _____
(If Artist is Incorporated)

I hereby acknowledge that I am familiar with and approve of the terms of the foregoing Agreement. I further acknowledge that I have entered into an employment agreement with Artist in accordance with the applicable provisions of the Agreement including, without limitation, the applicable provisions of paragraph 12 thereof. If Artist shall fail to fulfill any of its obligations under the Agreement for any reason, then, in addition to any other remedies that may be available, DC may require that I render my personal services and fulfill all of Artist's obligations directly to DC upon the same terms and conditions set forth in the Agreement. I shall look solely to the Artist for the payment of any and all compensation or other payment that may be required to be made as a result of any rendition of services arising under this Agreement.

(Employee's Signature If Artist is Incorporated)   (Employee's S.S. No.)


EXHIBIT WBDC 3 7/12/23 BS

Confidential   DCC_000101

*(Continued from front)*

8.(A) In addition to the Per Page Rate, if any DC publication in which the Work is published shall have a Net Domestic Sale (defined for purposes of this Agreement as copies of the United States edition sold in the United States and Canada less returns, "hurt books," publicity copies and bad debts) in excess of seventy-five thousand copies, DC shall make further payments to Artist according to the following schedule: (i) If the Work is published in a publication where the Work constitutes the entire story content, a royalty equal to two and one half percent of the cover price of the publication times the number of copies by which the Net Domestic Sale exceeds seventy-five thousand. (ii) If the Work is published in a publication where the Work is not the entire story content, DC shall pay to Artist that proportion of the royalties provided in 8(A)(i) which the Work shall bear to the entire story content contained in such publication.

(B) If Artist shall not have been the sole artist rendering services indicated in this Agreement, Artist's royalties hereunder shall be computed according to the following schedule: (i) If Artist has performed Pencils services only, royalties shall be payable at sixty percent of the amounts provided for in 8(A). (ii) If Artist has performed Inks services only, royalties shall be payable at forty percent of the amounts provided for in 8(A). (iii) If Artist has performed Layout or Finishing services only, royalties shall be payable at fifty percent of the amounts provided for in paragraph 8(A). (iv) If more than one artist provides any of the foregoing services, then the royalties payable to Artist hereunder shall be based upon DC's pro rata allocation of such amounts according to the number of story pages drawn by each artist.

(C) If the publication containing the Work is sold either solely on a non-returnable basis or solely on a non-returnable basis and also through retail chain stores such as Walden Books on a returnable basis, royalties due to Artist shall be calculated as above for Net Domestic Sales in excess of forty thousand copies but less than 100,001 copies, and calculated at a rate of 1.6 times the applicable rate provided in (A) and (B) above for Net Domestic Sales in excess of 100,000 copies.

(D) DC shall make any payments due to Artist hereunder not later than sixty days after DC shall determine the "final sale" of such publication. For publications sold on a non-returnable basis only, the final sale shall be determined by DC not later than sixty days after the publication's last announced off sale date. For publications sold completely or partially on a returnable basis (including the retail chain distribution of any publication), the final sale shall be determined by DC not later than eight months after the publication's last announced off sale date.

(E) If any payments due Artist hereunder shall be in a sum of less than fifty dollars, DC may delay such payment in order to accumulate a total sum of at least fifty dollars before making any payment to Artist. In no event, however, shall DC hold any such payment for a period in excess of two months beyond the date when it would otherwise have been payable.

(F) Artist's sole remedy for any failure by DC to make any of the payments due Artist hereunder, in lieu of all other remedies at law or in equity, shall be an action at law to obtain such payments and under no circumstances shall any such failure entitle Artist to any reversion or termination of DC's rights under this Agreement.

(G) The royalty obligation provided herein shall be applicable only to copies of the publication sold by DC through its regular wholesale and retail channels, and no royalties shall be payable on copies sold as premiums or given away at no charge for promotional or other purposes.

(H) If the Work shall consist of Cover, Sketch, and/or pin-up art only, no royalties under this paragraph 8 shall be due or payable.

9. DC shall return the original artwork delivered by Artist (the "Original Art") to the Artist and any other parties (the "Other Parties") performing any portion of the artistic services required to complete the Work, in accordance with DC's current policy. A copy of the policy is available on request. If Artist and the Other Parties wish to divide the Original Art differently from DC's current policy, they shall notify DC, in writing, prior to first publication of the Work, of a mutually agreed upon alternate method of art return. DC shall return such Original Art within one (1) year after the publication of the Work or the cancellation thereof, except that (1) if after reasonable diligence DC is unable to deliver the Original Art to Artist or; (2) if for any reason Artist refuses delivery, DC may retain, destroy or otherwise dispose of the Original Art without any liability to Artist. If the Original Art is lost, or substantially damaged (in excess of the normal wear and tear sustained in publishing a comic publication), DC shall reimburse Artist an amount equal to the Page Rate(s) actually paid to Artist with respect to the lost or damaged Original Art. Artist acknowledges and agrees that Artist shall not have any right to reproduce, publish or otherwise use or license the use of any of the Original Art except that Artist may assign, sell or transfer possession of the Original Art only, subject to the United States Copyright Act of 1976 (particularly sections 106 and 109) and to all of the terms and conditions of this Agreement. Artist shall take all necessary steps to protect copyright in such artwork and to affix any copyright and trademark notices required by DC irremovably and in such manner and location as to give reasonable notice to viewers.

10. Artist represents and warrants that: (A) Artist is free to enter into and fully perform his or her obligations under this Agreement; (B) the Work shall be created solely under the terms of this Agreement and has not been previously published in any form; (C) the Work will not violate any rights of DC or any third party; and (D) Artist is free to grant all rights herein granted. All representations and warranties made by Artist under this Agreement shall survive any termination, completion or expiration of this Agreement.

11. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements executed and to be fully performed therein. New York courts (state and federal) only, shall have exclusive jurisdiction over any controversies regarding this Agreement, and any action or proceeding that involves such a controversy will be brought only in those courts in New York County.

12. If Artist is incorporated, the following terms and provisions shall constitute a portion of this Agreement:

(A) Artist shall produce the Work pursuant to Paragraph 1 above by providing the services of Employee, and Artist shall cause Employee to perform all of the obligations of Artist hereunder.

(B) Artist further represents and warrants that: (i) it is a duly authorized and validly existing corporation; (ii) all materials and services to be rendered by Artist to DC hereunder shall be prepared or performed by Employee; (iii) Artist has entered into an employment agreement with Employee which provides, among other things, the following: (a) Employee is engaged by Artist to prepare for and deliver to Artist all Work to be delivered to DC by Artist hereunder; (b) the Work will be prepared by Employee within the regular scope of Employee's employment with Artist and shall constitute a work made for hire as that term is used in the United States Copyright Act of 1976; (c) if the Work is deemed not to be a work made for hire, then Employee assigns to Artist all rights in the Work including copyright and trademark rights and all other rights to exploit the Work in all media now or hereafter existing throughout the world in perpetuity; and (d) Artist shall have the right, but not the obligation, to use, and to permit others to use Employee's name, likeness and biographical information in connection with the Work, and the advertising, publicity and promotion thereof; (iv) such agreement with Employee shall be in full force and effect as of the execution of this Agreement, and Artist shall not alter, or permit alteration, or terminate or permit termination of such agreement until Artist has performed all of its obligations hereunder to DC's satisfaction; and (v) Artist shall provide DC with a copy of such agreement with Employee before or contemporaneous with the execution of this Agreement.

Confidential

DCC_000102