UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER WOZNIAK,<br><br>        Plaintiff,<br>   -v-<br><br>WARNER BROS. ENTERTAINMENT INC.,<br><br>        Defendant. | 22 Civ. 8969 (PAE)<br><br>OPINION & ORDER |
| DC COMICS,<br><br>       Third-Party Plaintiff,<br> -v-<br><br>CHRISTOPHER WOZNIAK,<br><br>      Third-Party Defendant. | |

PAUL A. ENGELMAYER, District Judge:

This case involves competing claims of copyright infringement involving the iconic superhero character Batman.

As brought by plaintiff Christopher Wozniak, this action entails claims that defendant Warner Brothers, Inc. ("Warner Brothers") infringed Wozniak's copyright. Wozniak claims that in 1990, he wrote a story (the "Story") about Batman. He claims that Warner Brothers, in its 2022 film *The Batman*, lifted elements of the Story. He claims that it is liable for copyright infringement, in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

Third-party defendant DC Comics, an affiliate which Warner Brothers impled and which owns numerous copyrights to Batman works and characters, counters that Wozniak is the wrongdoer. It brings two counterclaims against Wozniak, whom it contends wrote the Story at a

time he was working as a freelance artist for DC Comics.  The first counterclaim is for copyright

infringement.  It alleges that Wozniak's Story infringes on various DC Comics' copyrights.  The

second counterclaim alleges that Wozniak committed copyright fraud on the United States

Copyright Office when he registered the Story in 2022.

Pending now are motions for summary judgment by Warner Brothers and DC Comics.

For the reasons that follow, the Court (1) grants Warner Brothers' motion in full, disposing of all

claims brought by Wozniak; and (2) grants DC Comics' motion with respect to its claim against

Wozniak for copyright infringement, but denies the motion with respect to its claim of copyright

fraud.

## I.   Background[1]

### A.  DC Comics, Warner Brothers, and Batman

#### 1.  DC Comics' Batman Legacy

On March 30, 1939, DC Comics published the first Batman story in *Detective Comics*.

Dkt. 56 ("JSF") ¶ 1.  Since then, DC Comics has created and published millions of copies of

---

[1] The underlying facts which form the basis of this decision are drawn from the parties'
pleadings and their submissions in support of and in opposition to the instant motion—
specifically, the parties' joint statement of undisputed facts, Dkt. 56 ("JSF"); the deposition of
Christopher Wozniak, Dkt. 66, Ex. B ("Wozniak Dep."); Warner Brothers and DC Comics' Rule
56.1 statement of facts, Dkt. 61 ("Def. 56.1"); the declarations of Paul Levitz, Dkt. 62 ("Levitz
Decl."), Jay Kogan, Dkt. 63 ("Kogan Decl."), Chantal Nong, Dkt. 64 ("Nong Decl."), Matt
Reeves, Dkt. 65 ("Reeves Decl."), and James D. Weinberger, Dkt. 66 ("Weinberger Decl."), and
exhibits attached in support; Wozniak's response to the Rule 56.1 statement, Dkt. 71 ("Pl.
56.1"); and Wozniak's declaration in opposition to the motion, Dkt. 72 ("Wozniak Decl.").

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein.
Where facts in a party's Rule 56.1 statement are supported by testimonial or documentary
evidence, and are denied by a conclusory statement by the other party without citation to
conflicting testimonial or documentary evidence, the Court finds such facts true.  *See* S.D.N.Y.
Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the
statement required to be served by the moving party will be deemed to be admitted for purposes
of the motion unless specifically controverted by a correspondingly numbered paragraph in the

comic books, newspaper strips, magazines, and graphic novels containing depictions of, and stories about, Batman. *Id.* ¶ 2. Collectively, these works have delineated a literary space centered on the Batman character. They have also developed Batman's iconic supporting characters (*e.g.*, allies like Robin the Boy Wonder and Alfred the Butler; and villains like the Joker, the Penguin, and the Riddler), venues (*e.g.*, Gotham City and the Batcave), objects and gadgets (the Batmobile, the cape, the utility belt), and recurrent story elements. For ease of reference, the Court, drawing on a formulation used by DC Comics, refers here to this literary space as the "Batman Universe."[2]

Between December 1941 and today, DC Comics and its predecessors in interest have registered thousands of copyright registrations for Batman works. Kogan Decl. ¶ 4. These include for comics books, television shows, and films, "two-dimensional artwork," *id.*, Ex. J at 2, "audio, visual[,] and other cinematographic material," *id.*, Ex. H at 3, and "text adaptation," *id.*, Ex. J at 3. DC Comics today claims, without effective refutation in this litigation, to own all

---

statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2] For the uninitiated, "Batman" is the alias of Bruce Wayne, a wealthy philanthropist and businessman who resides in Gotham City. Batman's origin story is that, as a young child, Bruce Wayne witnessed the murder of his parents, leading him to dedicate his life to avenging his parents by seeking vengeance against criminals and bringing them to justice, and to making Gotham City a better place to live. He crafts a bat-inspired persona, and monitors Gotham's streets at night, as Batman, a merciless crimefighter. Batman relies on his intellect, fighting skills, wealth, and gadgets to fight crime, with the support of allies including Robin, butler Alfred Pennyworth, Catwoman, Batgirl (Barbara Gordon), and Commissioner James Gordon. Batman's foes include the Penguin, the Riddler, Carmine Falcone, and the Joker. *See* Dkt. 70, Ex. 1 ("Levitz Dep.") at 3–5; *see also Batman*, DC COMICS, https://www.dc.com/characters/batman; *Batman*, BRITANNICA, https://www.britannica.com/topic/Batman-fictional-character.

copyrights and trademark rights in the Batman character, including the literary and graphic depictions of Batman.[3]  *Id.* ¶ 4.; Def. 56.1 ¶ 7.

### 2.  Warner Brothers' Creation of *The Batman*

DC Comics has licensed the Batman character to appear in television shows and movies broadcast throughout the world.[4]  JSF ¶¶ 4–5.  Around 2017, DC Comics' licensee, Warner Brothers, set out to create a new Batman movie: *The Batman*.  Reeves Decl. ¶ 5.  In January 2017, Warner Brothers approached Matt Reeves to write and direct *The Batman*.  *Id.* ¶¶ 5–7, 11; JSF ¶ 7.  In advance of their meeting, Warner Brothers sent Reeves a pre-existing screenplay written by Chris Terrio and Ben Affleck.  Reeves Decl. ¶ 6.  Reeves initially declined the project because he did not want to use the pre-existing script.  *Id.*  Instead, he pitched Warner Brothers an original idea for a Batman story: "a Batman detective story where solving the case led to discovering something unexpectedly personal for Batman."  *Id.* ¶ 6.  Warner Brothers liked Reeves' idea and hired him to make *The Batman*.  *Id.*

---

[3] Wozniak denies that DC Comics and its predecessors-in-interest have owned all rights in copyright and trademark in the Batman character.  Pl. 56.1 ¶ 7.  But DC Comics has adduced evidence of numerous copyright registrations and renewals with the Copyright Office relating to Batman that date back to 1943, Kogan Decl., Exs. A–L—including a June 16, 1999, copyright registration for the "entire work: text and art" for the "Batman [Serial]," *id.*, Ex. L.  Terming these mere representative samples, DC Comics attests that it holds "many thousands" of such registrations for Batman works.  Kogan Decl. ¶ 4.  Wozniak has not come forward with counterexamples of registrations of Batman works held by persons or entities unaffiliated with DC Comics.

[4] A non-exhaustive list of Batman films and television shows includes: *Batman* (1943), *Batman and Robin* (1949), *Batman* (1966), *Batman* (1966–68), *The Batman/Superman Hour* (1968–69), *The Adventures of Batman* (1969), *Super Friends* (1973–77), *The New Adventures of Batman* (1977–78), *Batman* (1989), *Batman Returns* (1992), *Batman Forever* (1995), and *Batman & Robin* (1997).  JSF ¶¶ 4–5.

Reeves attests that he wrote the screenplay for *The Batman* with two writing partners, Mattson Tomlin and Peter Craig, taking inspiration from a variety of real-world events, 1970s noir films such as *Taxi Driver* and *Chinatown*, and his "own familiarity with pre-existing Batman works." *Id.* ¶¶ 8–10.[5]  Warner Brothers also furnished Reeves with a list of Batman gadgets and copies of published Batman comic books to help Reeves familiarize himself with Batman's background and the overall Batman Universe. *Id.* ¶ 11.

Reeves attests that he had "no contact with personnel from DC Comics while writing the screenplay," and that "DC Comics had no control or direction over the creation of the screenplay or the film, nor did it contribute any creative material to the screenplay." *Id.* ¶ 12.  During the writing process, Reeves attests, he met with executives at Warner Brothers, who gave feedback on his drafts by suggesting how to refine particular scenes. *Id.* ¶ 11.  But, Reeves attests, he had complete discretion whether to incorporate their feedback. *Id.*  Chantel Nong, executive vice president of DC Studios, the relevant unit of Warner Brothers,[6] attests that the feedback and edits from Warner Brothers "were minimal" and did not change the "basic plot and storyline for the screenplay." Nong Decl. ¶¶ 7–8.

### 3. *The Batman* Film

In 2022, Warner Brothers released *The Batman*. *Id.* ¶ 5.  The film was a "reboot" in that it did not continue the narratives in prior Batman movies. *Id.*

*The Batman* instead depicts Batman at a younger age, in his early days as a crimefighter in Gotham City. Def. 56.1 ¶ 11.  Batman faces off against the Riddler, a villain who first

---

[5] Wozniak disputes that Reeves conceived of the original story used in *The Batman*. Pl. 56.1 ¶ 9. That claim is conclusory, however, and unsupported by admissible evidence.

[6] DC Studios is a division of a Warner Brother subsidiary.  Nong has held executive level posts in film production within Warner Brothers or a subsidiary since June 2010.  Nong. Decl. ¶ 3.

appeared in Batman comics in 1948. *Id.* The Riddler murders prominent Gotham citizens throughout the film, each time leaving cryptic clues for Batman. Following these, Batman attempts to identify the villain and his next victims. Batman's investigation leads him down a road of personal discovery, in which he encounters other familiar characters from the Batman Universe, including Selina Kyle (Catwoman), Oswald "Oz" Cobblepot (Penguin), and mobster Carmine Falcone. Reeves Decl. ¶ 14. In this process, Batman mistakenly concludes that the Riddler has uncovered his identity of Bruce Wayne, but this proves wrong. *Id.* Meanwhile, the Riddler, through social media, radicalizes his followers to flood Gotham and attempts to assassinate Gotham's mayor-elect, Bella Reál. *Id.* At the end of the movie, Batman defeats the Riddler and his followers, and saves Reál. *Id.*

*The Batman* premiered on March 1, 2022, in New York, eliciting "mixed reactions from critics"[7] and generating over $369 million in domestic box office receipts. 3rd P. Compl. ¶ 13.

### B. Christopher Wozniak

#### 1. Wozniak's Freelance Work for DC Comics

Christopher Wozniak is a writer and illustrator. Wozniak Decl. ¶ 1. Between 1985 and 1999, he performed intermittent freelance work for DC Comics. JSF ¶ 8. Although Wozniak claims to have written and submitted stories to DC Comics "on spec," none were accepted or published. *Id.* ¶ 9.

---

[7] *See, e.g.*, CNBC, *'The Batman' is a refreshing adaptation, but 'handcuffed' by its PG-13 rating, critics say*, https://www.cnbc.com/2022/03/02/the-batman-reviews-what-critics-thought-of-the-new-dark-knight-film.html.

DC Comics did pay Wozniak for creating certain artwork for comic books. Wozniak

Dep. at 15. For the artwork DC Comics accepted and bought, Wozniak and DC Comics entered

into contracts containing the following disclaimer:

> Artist [Wozniak] acknowledges that the Work shall be derivative of preexisting material, including, without limitation, the name and pictorial and literary representations of fictional characters, companies, places and things (the "Preexisting Material"); that DC owns or otherwise has rights in the Preexisting Material; and that the Artist would be unable to produce the Work without the Preexisting Material. Artist further acknowledges that Artist shall not have, acquire or claim any right whatsoever in any of the Preexisting Material and shall not have the right or privilege to use any of the Preexisting Material except as provided herein or as DC otherwise consents in writing.

Weinberger Decl., Ex. C (contract signed on September 20, 1991) at 2; Ex. D at 2 (contract

signed on December 2, 1992) at 2.

### 2. Wozniak's Batman Story

In 1990, Wozniak attests, he wrote a story originally titled "The Ultimate Riddle," which

he later retitled "The Blind Man's Hat" (the "Story"). Wozniak Decl. ¶ 3. The Story depicts an

"aging" Batman, Weinberger Decl., Ex. E ("Story") at 4, working with police commissioner

James Gordon to battle the Riddler, *id.* at 1. The Story unfolds as a "decaying" and corrupt

Gotham faces sociopolitical turmoil, hyperinflation, and mass unemployment. *Id.* at 2–3. In the

Story, the Riddler arranges "six trials" whose puzzles Batman must solve to answer "six riddles."

*Id.* at 2. Midway through the Story, China bombs Gotham. *Id.* at 11. A virus breakout causes

Chinese cities to go into quarantine, causing fear that the virus will spread to the United States.

*Id.* at 4, 10, 12. As Batman attempts to answer each trial's riddle, he mistakenly concludes that

the Riddler has uncovered his true identity of Bruce Wayne. *Id.* at 12. Soon thereafter, Batman

figures out this is false. *Id.* at 12–13. In the final trial, it is revealed that the Riddler had created

the virus, responsible for the plague, to induce Armageddon and destroy the human race. *Id.* at

13–14.  An epic battle between Batman and the Riddler ensues, in which Batman retrieves the

antidote to the virus, foiling Riddler's plan.  *Id.* at 14–16.  At the end, the reader realizes that the

Joker was behind the Riddler's plot.  *Id.* at 16.

Wozniak attests that he wrote the Story with the goal of publishing it at DC Comics.

Wozniak Decl. ¶ 5.  The Story contains numerous and repeated references to characters from the

Batman Universe.  These include Batman and alter ego Bruce Wayne, the Riddler,

Commissioner Gordon, Barbara Gordon, Harley Quinn, Alfred the Butler, and the Joker.  The

Story also references locations and objects central to the Batman Universe.  These include the

Batcave, Wayne Manor, the Batmobile, Batman's caped costume and cowl, and Gotham City.

Wozniak attests that, between 1990 and 1999, he "pitched" the Story to four editors[8] at DC

Comics, but that DC Comics declined to use it each time.[9]  Wozniak Dep. at 53–54.  The Story

remained the same during this period, save that in 1999, Wozniak added the "Joker ending."  *Id.*

at 35–36.

The parties' factual accounts with respect to the Story are as follows.  DC Comics takes

the position that, because the Story contained elements from within the Batman Universe that are

protected by its copyrights, including most centrally the use of the Batman character, freelancer

Wozniak did not have authority to disseminate the Story outside of DC Comics.  Its executives

state that DC Comics never gave Wozniak such authority.  Paul Levitz, who between 1989 and

2001 was DC Comics' executive vice president and publisher and between 2001 and 2009 was

---

[8] These were: Archie Goodwin, Andy Helfer, Joey Cavalieri, and Jordan Gorfinkel.  Wozniak Dep. at 53–54.

[9] DC Comics does not dispute that Wozniak submitted the Story to DC Comics' editors.  In its Local Civil Rule 56.1 statement of facts, DC Comics writes: "a short Batman story, allegedly written in 1990 and the subject of Wozniak's claims (the 'Story') is among [the stories Wozniak submitted to DC Comics 'on spec']."  Def. 56.1 ¶ 15.

its president and publisher, attests that DC Comics generally did not accept unsolicited submissions for stories from freelancers. Levitz Decl. ¶¶ 2–3, 22. He attests that freelancers required DC Comics' permission to independently publish or otherwise commercially use works that included Batman characters. *Id.* ¶ 22. He attests that DC Comics never consented to Wozniak's publication of any story using characters and elements from the Batman Universe. *Id.* ¶ 24.

Wozniak attests that DC Comics "consented to [him] . . . writ[ing] a story" in his capacity as a freelancer. Wozniak Dep. at 52. He attests that, after DC Comics rejected the Story, he pitched different versions of it to other publishers. Wozniak Dep. at 43. In these versions, Wozniak attests, he eliminated all references to Batman, but maintained the Story's basic plot and dialogue. For example, in 1993, he pitched a version of the Story to Jim Valentino at Image Comics, in which he "name swap[ped]" Batman for "Shadow Hawk," an Image Comics character. Wozniak. Dep. at 43, 59. In 2010 and 2017, Wozniak attests, he created additional versions of the Story. *Id.* at 59. Wozniak did not send any of these versions to DC Comics or Warner Brothers. *Id.* at 61–64.

DC Comics and Warner Brothers have searched their records and did not find any copies of the Story (or any story written by Wozniak). Nong Decl. ¶ 12; Kogan Decl. ¶ 9. DC Comics attests that its executives were unaware, before this litigation, of Wozniak's Story. Kogan Decl. ¶ 9. Reeves similarly attested. Reeves Decl. ¶¶ 16–17.

### 3. Wozniak's Encounter with Michael Uslan in 2008

In claiming that the film *The Batman* draws upon his Story, Wozniak theorizes that DC Comics may have learned of the Story in the following manner.

In 2008, at the New York Comic Convention, Michael Uslan approached Wozniak's booth and asked for a complimentary copy of his comic book, *Barren Soil*. Wozniak Decl. ¶ 7. After the convention, Wozniak discovered that Uslan was identified as an executive producer of various Batman films. *Id.* Wozniak attests that he then submitted a copy of the Story to Uslan, pitching it as a basis for a future Batman film. *Id.*

Uslan is not an employee of DC Comics or Warner Brothers. Nong Decl. ¶ 9. According to Warner Brothers, Uslan, in 1979, acquired an option to depict Batman comic book characters in films. [10] *Id.* Later that year, Warner Brothers attests, Uslan entered into an agreement with Casablanca Productions (later Polygram Pictures, Inc.) for the development of a motion picture based on Batman characters. *Id.* In 1981, Polygram Pictures assigned its rights to Warner Brothers. *Id.* In 1988, Warner Brothers and Uslan amended the agreement, to provide that Uslan would receive credit as "Executive Producer" on any future movie released by Warner Brothers that included Batman characters. *Id.* As a result, Warner Brothers explains, Uslan has been listed as an executive producer of "over 40 live action and animated films because those films feature Batman characters," including *The Batman. Id.* That agreement, however, "did not provide for any creative control or involvement" by Uslan over those films. *Id.* As such, Warners Brothers attests, although Uslan "is listed as an executive producer of *The Batman* (2022), he had no involvement in the development or production of the film at all." *Id.* ¶ 11. Other than Uslan's designation as an executive producer, the summary judgment record lacks any evidence indicative of any involvement by Uslan in the creation of *The Batman*.

---

[10] Nong's declaration does not state from who, or on what terms, Uslan acquired this option.

### 4. Wozniak's 2022 Copyright Registration

In March 2022, when *The Batman* premiered, Wozniak attests, he "was stunned to see" what he viewed as "so many similarities between [his Story] and *The Batman* motion picture." Wozniak Decl. ¶ 9. Wozniak claims that *The Batman* copied major elements of his Story—in his view, the movie is structurally identical to the Story and unfolds in the exact same order. *Id.*

On August 9, 2022, Wozniak completed an electronic application with the United States Copyright Office to register copyright ownership of the Story. Weinberger Decl., Ex. F. On the application, he titled the work "Wozniak Batman Riddler Plot," and reported 1990 as the Story's "Date of Creation." *Id.* He electronically attached a copy of the Story to the application. Wozniak Dep. at 33.

Wozniak attests that watching *The Batman* prompted him to register for a copyright for the Story. *Id.* at 38–39. At his deposition, he stated:

> [C]learly [the Story] had been used—my name had been taken off the story and used to make a film and I thought it was quite obvious that I was going to have to bring a lawsuit. The original story . . . predates the film by many years, but I thought I should have the copyright as well just to—you know, just so we could be here.

*Id.* at 38.

The copyright registration application asked whether the work contained any preexisting material. Wozniak left this field blank. *See* Dkt. 66, Ex. F; Wozniak Dep. at 39–40.

The Copyright Office registered Wozniak's work, listing the copyright registration date as August 9, 2022. Weinberger Decl., Ex. F. In July 2023, Wozniak sent "additional copies" of the Story to the Copyright Office to append to his initial copyright registration. Wozniak Dep. at 59. These copies contained the "name swap" versions of the Story. *Id.* at 59–60.

## II.   Procedural History

On October 20, 2022, Wozniak filed the Complaint, bringing, on different theories, claims of copyright infringement against Warner Brothers based on *The Batman*'s alleged infringement of his Story. It claims (1) direct copyright infringement under 17 U.S.C. §§ 101 *et seq.*, (2) contributory copyright infringement under 17 U.S.C. § 501, and (3) vicarious copyright infringement. Dkt. 1 ("Compl.") ¶¶ 73–97. It contends that Warner Brothers copied constituent elements of the Story and used them in *The Batman*. *See id.* ¶¶ 8, 43, 74, 77–78. It seeks declaratory relief, injunctive relief, and monetary damages. *Id.* at pp. 18–19.

On December 15, 2022, Warner Brothers filed an answer, in which it denied copying any elements of the Story in *The Batman*, and asserted affirmative defenses, including that the Story itself is the product of an act of infringement—an "unauthorized derivative work" of Batman copyrights owned by DC Comics—and that Wozniak's claims are barred under the doctrine of "unclean hands." Dkt. 9 at p. 8.

The same day, DC Comics moved to intervene under Federal Rule of Civil Procedure 24, Dkt. 11, and filed a memorandum of law and declarations in support, Dkts. 12–14. On December 20, 2022, the Court granted that motion. Dkt. 20. The same day, DC Comics filed a third-party complaint against Wozniak. It alleged (1) copyright infringement under 17 U.S.C. §§ 101 *et seq.*, and (2) fraud on the Copyright Office based on Wozniak's copyright registration of the Story. Dkt. 21 ("3rd P. Compl.") ¶¶ 1–2, 21–29. On January 11, 2023, Wozniak filed an answer to the Third-Party Complaint. Dkt. 24.

On November 14, 2023, after discovery, DC Comics and Warner Brothers filed a joint motion for summary judgment on all claims, Dkt. 59, and a supporting memorandum of law, Dkt. 60 ("Def. Br."). On December 5, 2023, Wozniak filed an opposition. Dkt. 69 ("Pl. Br.").

On December 15, 2023, DC Comics and Warner Brothers filed a reply.  Dkt. 73 ("Def. Reply Br.").

On January 18, 2024, the Court heard argument, Dkt. 78 ("1/18/24 Tr."), and ordered supplemental briefing on Wozniak's statute of limitations defense.  Dkt. 75; Dkt. 77 ("Pl. Supp. Br."); Dkt. 76 ("Def. Supp. Br.").

## III.    Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citation omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (cleaned up).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, a court is "required to

resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citation omitted).

## IV.    Discussion

Warner Brothers moves for summary judgment on Wozniak's claims, and DC Comics moves for summary judgment on its counterclaims against Wozniak. The Court, finding this sequence more logical, considers DC Comics' motion first.

### A.    DC Comics' Copyright Infringement Claim Against Wozniak

To establish its claim of copyright infringement against Wozniak, DC Comics must prove: "(1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

#### 1.    Ownership of a Valid Copyright

Under the Copyright Act of 1976, a "certificate of registration" from the Copyright Office within five years of first publication of a work "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Where there has been such registration, "the party challenging the validity of the copyright has the burden to prove the contrary." *Stern v. Lavender*, 319 F. Supp. 3d 650, 669 (S.D.N.Y. 2018) (citation omitted). "Generally speaking, the presumption of validity may be rebutted '[w]here other evidence in the record casts doubt on the question.'" *Fonar Corp. v. Domenick*, 105 F.3d

14

99, 104 (2d Cir. 1997) (quoting *Durham Indust., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)).

DC Comics contends that it holds thousands of copyright registrations covering Batman works. It has adduced evidence of a large representative sample of these. Kogan Decl., Exs. A–L. These copyright registrations create a rebuttable presumption of valid ownership of copyright in the Batman works, as well as the Batman character, and other characters and story elements from the Batman Universe these works delineate.

Attempting to rebut that presumption, Wozniak makes two arguments.

First, he notes, the original Batman stories were created in 1938 by Bob Kane, Bill Sienkiewicz, and Bill Finger. He argues that DC Comics' copyright registrations cannot be *prima facie* evidence of valid copyright ownership unless DC Comics can come forward with an agreement in which the original creators assigned ownership of the copyrights in the Batman character to DC Comics. There is no legal authority supporting that argument. Wozniak has not identified a case holding that where a challenger has not adduced evidence undermining a registration's validity, the registrant nonetheless must adduce documentation supporting its copyright ownership for the registration to be *prima facie* evidence of ownership. *See Fonar Corp*, 105 F.3d at 104 (requiring challenger to adduce "*other evidence* in the record"). Here, Wozniak has not adduced any evidence that casts doubt on the validity of DC Comics' claim to own the original Batman works, whether as a result of these having been works for hire at a predecessor entity, or copyright ownership having transferred thereafter to such an entity. *Cf.* Dkt. 70, Ex. 1 ("Levitz Dep.") at 5 (testifying that Kane "did some work" for DC Comics' predecessor).

Second, Wozniak argues, some certificates of registration with which DC Comics has come forward were registered under separate entities: DC Comics Inc., Detective Comics Inc., National Periodical Publications, Inc., and National Comics Publications, Inc. *See Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 WL 3683510, at *4 (S.D.N.Y. Aug. 19, 2021) ("[W]hen a copyright was transferred from the original registered owner to another party," that party "faces the additional burden of proving valid chain of title because nothing in the registration certificate evidences his right to claim through the original copyright claimant." (citations and internal quotation marks omitted)).  That argument fails, too.  Jay Kogan, senior vice president of legal at DC Comics, has attested without refutation that although some decades-old registrations of Batman works "list DC Comics' predecessors-in-interest (including DC Comics Inc., Detective Comics Inc., National Periodical Publications, Inc., and National Comics Publications, Inc.) as owners of the copyright, . . . DC Comics now owns all rights in these registrations along with thousands more."  Kogan Decl. ¶ 4.  Paul Levitz, DC Comics' former president and publisher, has attested to the same.  *See* Levitz Decl. ¶¶ 12–13 ("At all relevant times, DC Comics and its predecessors-in-interest [DC Comics Inc., Detective Comics Inc., National Periodical Publications, Inc., and National Comics Publications, Inc.] have owned all right, title and interest in and to all copyrights and trademark rights in the character of Batman, including his literary and graphic depictions.").  Moreover, DC Comics has identified numerous registrations and renewals that list DC Comics as either the current author of a work containing Batman, or a renewal claimant of a copyright registration that originally belonged to a predecessor-in-interest.  *See* Kogan Decl., Ex. G (listing DC Comics as renewal copyright claimant, and National Periodical Publications, Inc. as author and original copyright claimant of "Detective Comics #359"); Ex. I (listing DC Comics as renewal copyright claimant, and

16

National Periodical Publications, Inc. as author and original copyright claimant of "Detective Comics #411") [11]; Ex. L (listing DC Comics as author and copyright claimant of serial "Batman"). Such evidence is itself sufficient to sustain DC Comics' claim of valid ownership.

DC Comics thus has established that it is the owner of valid copyrights of Batman works.

### 2.   Unauthorized Copying

To satisfy the second element of a copyright infringement claim—unauthorized copying—"a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Jorgensen*, 351 F.3d at 51. This inquiry has two parts. First, DC Comics must show that Wozniak "actually copied" its work. *Bauer v. Yellen*, 548 F. Supp. 2d 88, 93 (S.D.N.Y. 2008). Actual copying "may be established by direct or indirect evidence." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001). Second, the actual copying must have "amounted to an 'improper or unlawful appropriation.'" *Bauer*, 548 F. Supp. 2d at 93 (citations omitted). This inquiry "explores whether the copying that occurred was of such a nature that copyright infringement may have taken place as a matter of law." *Id.* For there to have been improper appropriation, "the accused work must exhibit 'substantial similarities' to the [allegedly infringed] work." *Id.* (citations omitted). "Substantial similarity" must be "more than de minimis," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003), and the similarities must be such that "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same," *Boisson*, 273 F.3d at 272.

As to the issues of both actual copying and substantial similarity, DC Comics contends that Wozniak based his Story on DC Comics' copyrighted Batman material without obtaining (or

---

[11] Detective Comics Nos. 359, 411 both feature Batman.

even seeking) its consent or authorization.  Primarily, DC Comics claims infringement with respect to the Batman character itself.  But it also contends that Wozniak misappropriated other characters and elements central to the Batman Universe.  To this end, DC Comics notes, the Story employs characters including Alfred Pennyworth, Bruce Wayne, Commissioner Gordon, Barbara Gordon, Harley Quinn, the Riddler, and the Joker; and story elements including the Batmobile, the Batcave, and Gotham City.  As DC Comics notes, it and its predecessors in interest have repeatedly protected expressions of these characters and story elements by registering copyrights of comic books, animated TV shows, and movies prominently featuring these characters and elements.  *See, e.g.*, Kogan Decl., Ex. L (DC Comics' copyright registration for Batman Serial dated June 16, 1999); *id.*, Ex. K (predecessor DC Comics Inc.'s copyright registration for "Batman the Animated Series" dated November 23, 1992); *id.*, Ex. I (DC Comics' renewal application for "Detective Comics #411" dated May 1971).

　　As more fully developed below, Wozniak's Story liberally exploits—indeed, is rife with—Batman characters and story elements, and such is fatal to Wozniak as to both actual copying and substantial similarity.  As the Second Circuit has long recognized, "characters and events" that "spring from the imagination" of authors are copyrightable, creative expression." *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 744 (S.D.N.Y. 2017) (quoting *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998)).  When a party "own[s] the copyrights in various works embodying the character," as DC Comics does here, that party "thereby acquire[s] copyright protection for the character itself." *Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 235 (2d Cir. 1983) (citing *Detective Comics, Inc. v. Bruns Publ'ns, Inc.*, 111 F.2d 4. 32 (2d Cir. 1940)).

Indeed, courts in this Circuit have applied this principle to the Batman character himself. Former Judges Mukasey and Pauley have each recognized, in the former's words, that "D.C. Comics owns the copyright to the Batman character." *DC Comics, Inc. v. Bobtron Int'l, Inc.*, No. 89 Civ. 4358 (MBM), 1990 WL 106771, at *1 (S.D.N.Y. July 25, 1990); *see also Sapon v. DC Comics*, No. 00 Civ. 8992 (WHP), 2002 WL 485730, at *4 (S.D.N.Y. Mar. 29, 2002) ("[W]hile Batman's costume and character have evolved over the years, he has retained unique, protectable characteristics, such as the iconographic costume elements and his unique life story."); *id.* at *11 (noting that "courts have held Batman both alone and with Robin as copyrightable and infringed in a number of cases") (citing *DC Comics, Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24 (2d Cir. 1982); *Warner Bros., Inc. v. Rooding*, No. 89 Civ. 5038, 1989 WL 76149 (N.D. Ill. 1989); *Detective Comics, Inc. v. Fox Publ'ns, Inc.*, 46 F. Supp. 782 (S.D.N.Y. 1942)); *cf. DC Comics v. Towle*, 802 F.3d 1012, 1027 (9th Cir. 2015) (finding the "Batmobile" is entitled to copyright protection).

### a.  Actual Copying

DC Comics contends that the evidence directly and explicitly establishes actual copying, in that Wozniak concedes he intentionally created a "Batman story" using Batman characters and elements. Wozniak Dep. at 15. DC Comics notes that, by his own account, Wozniak thereupon submitted the story to DC Comics in hopes that it would be published as part of a Batman comic book series. Wozniak does not seriously dispute this element. He acknowledges that he drew upon Batman and other characters and elements of the Batman Universe in developing the Story. *See, e.g.*, Wozniak Dep. at 15 ("I wrote the Batman story."); *id.* at 31 (Wozniak describing the plot of his Story: "Basically it's a Riddler story. . . . Riddler is a Batman villain."); *id.* at 41–42 ("I initially pitched it as a Batman story. . . . I wanted it to be a new part of the Batman

universe."); *id.* at 43 ("The initial version of this is that I wanted it to be a Batman story."). And Wozniak's lifting of numerous characters and elements from the Batman Universe is obvious on the face of the Story.

There is thus no genuine issue of material fact as to this element. *See Sapon*, 2002 WL 485730, at *1 ("Sapon's letter to DC Comics indicated that he desired DC Comics to integrate his work into the preexisting Batman. That statement constitutes an admission of copying, regardless of whether Sapon copied only insubstantial elements or transformed preexisting elements."); *Colting*, 270 F. Supp. 3d at 744 (finding actual copying on summary judgment when defendants "display[ed] the actual titles of plaintiffs' Novels on the front covers of their Guides and concede that their Guides are 'based on the novels.'"); *Paramount Pictures Corp. v. Carol Pub. Grp.*, 11 F. Supp. 2d 329, 332–33 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir. 1999) ("[I]t would be absurd to suggest that" actual copying did not occur in a case where defendant's work "is devoted to telling a large portion" of the story in plaintiff's work.); *Castle Rock Ent. v. Carol Pub. Grp., Inc.*, 955 F. Supp. 260, 264 (S.D.N.Y. 1997), *aff'd*, 150 F.3d 132 (2d Cir. 1998) (finding actual copying on summary judgment where "[d]efendants make 'no secret' of the fact that" their work is "based upon *Seinfeld*").

### b. *Substantial Similarity*

Works are substantially similar if an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (citation and internal quotation marks omitted). In applying this test, courts inquire whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work," and "compare the contested design's total concept and overall feel with that of the allegedly infringed

work as instructed by our good eyes and common sense." *Croak v. Saatchi & Saatchi, N. Am., Inc.*, 174 F. Supp. 3d 829, 834 (S.D.N.Y. 2016) (cleaned up).

Where the works at issue "contain both protectible and unprotectible elements," the analysis should be "more discerning"—the Court should "attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010). "Substantial similarity exists when protected expressions in the earlier work was copied and the amount that was copied is more than de minimis." *DiTocco v. Riordan*, 815 F. Supp. 2d 655, 666 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012) (cleaned up). "[I]n the end, [the] inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work." *Peter F. Gaito*, 602 F.3d at 66 (cleaned up). The issue is thus whether "a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Id.* at 63 (citation omitted).

Applied here, that inquiry examines whether there is substantial similarity between Wozniak's Story and the elements protected by DC Comics' copyrights, including Batman and associated characters and story elements. There plainly is. As even a high-level review of the Story reveals, its characters "are not merely substantially similar to [DC Comics'] characters, they *are* [those] characters." *Anderson v. Stallone*, No. 87 Civ. 0592 (WDK), 1989 WL 206431, at *8 (C.D. Cal. Apr. 25, 1989).

*Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736 (S.D.N.Y. 2017) is squarely on point. Defendants Fredrik Colting and Melissa Medina published "children's guides" to four novels: *Breakfast at Tiffany's*, *The Old Man and the Sea*, *On the Road*, and *2001: A Space*

*Odyssey*. The Guides' front covers "prominently display[ed] the titles of plaintiffs' Novels and the names of the authors." *Id.* at 742. For each novel, the Guides featured illustrations depicting the novel, one-line quotations attributed to the authors, and plot summaries. *Id.* Judge Rakoff found the Guides substantially similar to the underlying novels. "[D]efendants' Guides," he noted, "are not even superficially distinct from the respective Novels"—"they are explicitly based on plaintiffs' Novels." *Id.* at 745. And, he noted, "[d]efendants do not even attempt to conceal their copying. Indeed, their explicit intention was to lift plaintiffs' characters to 'introduce' them to children." *Id.* at 747.

So too here. Wozniak's Story is "explicitly based" on Batman. *Id.* at 745. Unavoidably, Wozniak intentionally lifted Batman characters to create, in his own words, "a Batman story." Wozniak Dep. at 41–43; *see, e.g.*, *Castle Rock Ent.*, 955 F. Supp. at 266 (finding substantial similarity on summary judgment where "[defendant's work] "is devoted to questions concerning creative components of *Seinfeld*. In other words, by copying 'facts' that plaintiff invented, [defendant's work] appropriates plaintiff's original contributions") (cleaned up); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993) (affirming substantial similarity finding on summary judgment where there was "literal similarity" between two works).

Wozniak attempts several arguments in response.

First, he argues that the characters he copied—"Batman," "the Batmobile," the "Batcave," "the Riddler," and "Bruce Wayne"—are not entitled to copyright protection because they are merely "[w]ords and short phrases," that is, "names, titles, and slogans." Pl. Mem. at 15. That argument attacks a straw man. It is true that copyright does not protect words, short phrases, or even "basic characters," "stock figures," "scènes à faire"—"incidents, characters or

settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Colting*, 270 F. Supp. 3d at 746–47. DC Comics does not argue otherwise. But "copyright law *does* protect characters who are sufficiently delineated to be original." *Id.* at 746. There is conclusive case law giving protection to such characters—including superheroes. *See, e.g.*, *Detective Comics v. Bruns Pubs.*, 111 F.2d 432, 433 (2d Cir. 1940) (finding "Wonderman," a superhero with only superficial differences from "Superman," infringing, even though both were drawn from the same basic Herculean character types); *Am. Broad. Cos.*, 720 F.2d at 235 ("Plaintiffs own the copyrights in various works embodying the character Superman and have thereby acquired copyright protection for the character itself."); *Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 519 F. Supp. 388, 391 (S.D.N.Y. 1981), *aff'd*, 683 F.2d 610 (2d Cir. 1982) ("[C]haracters that are well-delineated in the Tarzan works of Edgar Rice Burroughs are protected from infringement by the copyright in the work itself."). And, as noted, the case law has already so held as to Batman and associated characters and story elements. It has upheld claims by DC Comics of copyright infringement of these characters and elements, finding them sufficiently delineated across thousands of comic books, movies, and shows to merit protection. *See, e.g.*, *Sapon*, 2002 WL 485730, at *11 ("DC Comics' Batman is highly developed and therefore strongly protected."). The Batman characters that Wozniak copied are entitled to copyright protection.

Wozniak next argues that any copying was with DC Comics' consent. He contends that he was encouraged to pitch work involving characters from DC Comics' stories. This argument fails, too. The evidence (in particular, Wozniak's testimony) at most could support that DC Comics consented to Wozniak's using Batman characters for the purpose of pitching artwork or scripts *to DC Comics*. But Wozniak has not adduced evidence that DC Comics ever consented

to his creating a derivative work drawn from DC Comics' copyrighted works, for his own use and exploitation. To the contrary, with respect to the artwork Wozniak successfully pitched and sold to DC Comics, Wozniak signed contracts expressly acknowledging that "DC [Comics] owns or otherwise has rights in the Preexisting Material" and that he did "not have the right or privilege to use any of the Preexisting Material except as provided herein or as DC otherwise consents in writing." Weinberger Decl., Ex. C. There is no record evidence that Wozniak ever received authorization from DC Comics to exploit a story using Batman characters for his own personal use.

DC Comics thus has demonstrated a lack of material issues of fact as to its ownership of valid copyrights to Batman characters, Wozniak's actual copying of these characters, and the substantial similarity between the characters and elements in the Story and those protected by DC Comics' copyrights. Subject to Wozniak's final argument that DC Comics' claim is untimely, summary judgment is warranted for DC Comics.

### c. *Statute of Limitations*

Wozniak argues that DC Comics' copyright infringement claim is barred by the statute of limitations. Civil actions for copyright infringement must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Wozniak argues that DC Comics' claim accrued in 1990 when, as is undisputed, he submitted the Story to DC Comics on spec. Pl. 56.1 ¶ 15.

For copyright infringement, the Second Circuit follows the "discovery rule," under which a claim does not accrue "until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014). The "separate accrual rule" also applies: "when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Petrella v. Metro-*

*Goldwyn-Mayer, Inc.*, 652 U.S. 663, 671 (2014). Each act of infringement is a separate violation. As reviewed above, an act of infringement occurs upon the copying of constituent original elements of a work that is subject to a valid copyright claim. "Copying," in turn, "is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (cleaned up). These are "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly." 17 U.S.C. § 106(1)–(5).

DC Comics' copyright infringement claim is not barred by the statute of limitations for a simple reason: whether or not Wozniak earlier committed copyright infringement, he committed a separate act of infringement in 2022 when he filed the infringing Story with the U.S. Copyright Office. Wozniak attests that when he filed for registration, he "upload[ed] a copy [of the Story] to the Copyright Office." Wozniak Dep. at 33. As Judge Rakoff has recognized, "making [a] deposit copy" "with the Copyright Office in connection with [the] registration application" and "delivering it to the Copyright Office" is an act that infringes the copyright owner's "exclusive rights to 'reproduce' and 'distribute' copies of the copyrighted work." *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *9 (S.D.N.Y. Sept. 10, 2013) (citing 17 U.S.C. § 106(1), (3)). That follows from 17 U.S.C. § 106. When Wozniak uploaded a copy of the Story

to the Copyright Office on August 9, 2022, he necessarily "reproduce[d] the copyrighted work" in question—he reproduced DC Comics' pre-existing copyrighted material (the various Batman characters and elements) in his Batman Story.  17 U.S.C. § 106(1).  That act of reproduction alone is an infringing act under 17 U.S.C. § 106(1), because the exclusive right of reproduction in § 106(1) does not require a "public" reproduction, unlike the rights in § 106(3)–(5), which are to engage in "public" distribution, performance, and display.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 474 (1984) (Blackmun, J., dissenting) ("[T]he reproduction rights associated with motion pictures under § 106(1) are not limited to reproduction for *public* distribution; the copyright owner's right to reproduce the work exists independently, and the 'mere duplication of a copy may constitute an infringement even if it is never distributed.'" (citing Register's Supplementary Report 16)).

Because Wozniak's act of uploading a copy of the Story to the Copyright Office was a separate act of infringement, the limitations period began to run the day he did so: August 9, 2022.  DC Comics' copyright infringement claim based on this act, brought within three years of that date, is timely.[12]  *See Petrella*, 572 U.S. at 671 ("[W]hen a defendant commits successive

---

[12] To the extent that DC Comics might mean to claim that Wozniak's submission of a copy of the Story to DC Comics in 1990 was a separate act of infringement, *that* claim is clearly untimely. (And given Wozniak's claim that DC authorized him to do so, summary judgment could not be granted for DC Comics on this claim even if it were timely.)

In its brief, DC Comics also claims that Wozniak infringed in creating new copies of his Story in 2008, 2010, and after 2011.  Def. Supp. Br. at 3 n.1.  The Court does not consider here whether a timely such claim could be made—which would appear to turn on the date of the application of the discovery rule to these acts of copying—as DC Comics' counterclaim does not bring a claim as to these acts of copying.

violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong.").[13]

DC Comics is thus entitled to entry of summary judgment on its copyright infringement claim.

### B.      DC Comics' Copyright Fraud Claim Against Wozniak

In a separate claim, DC Comics contends that Wozniak committed copyright fraud on the Copyright Office because, in registering the story, he did not acknowledge that he was exploiting Batman material owned by DC Comics. 3rd P. Compl. ¶¶ 26–29.

An allegation of fraud on the Copyright Office "is typically brought in an infringement action as an affirmative defense to the enforcement of a registered copyright certificate." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000). But an allegation of fraud can be pursued as a separate cause of action. Still, "[a] party seeking to establish fraud on the Copyright Office . . . bears a heavy burden." *Id.* at 525. It "must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations." *Id.* (internal citations omitted).

As proof of Wozniak's ostensible "deliberate" and "willful" misrepresentations to the Copyright Office in the course of registration, DC Comics notes evidence that Wozniak knew he: (1) was obliged to report to the Copyright Office any pre-existing copyrighted material within the Story; and (2) could not use characters and elements of the Batman Universe in his Story without DC Comics' authorization. A jury certainly could find deliberate misrepresentation

---

[13] DC Comics separately argues that this claim is timely on the ground that the limitations period began to run on October 20, 2022, when Wozniak filed his Complaint asserting ownership of the copyright in the Story. Def. Supp. Br. at 1–2. Because DC Comics' claim is timely based on Wozniak's act of reproducing the story in connection with his Copyright Office filing, the Court does not have occasion to consider this theory.

based on such evidence, but this does not compel entry of summary judgment on this element for DC Comics.

First, DC Comics argues that Wozniak knew he was obligated to report to the Copyright Office the pre-existing Batman material on which his Story was based. It notes 17 U.S.C. § 409(9), which provides that an "application for copyright registration . . . shall include": "in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409(9). That legal obligation, however, does not establish Wozniak's subjective state of mind at the time he registered. Wozniak testified that he lacks legal training and was unrepresented when he registered for the copyright. *See* Wozniak Dep. at 38. And DC Comics has not identified evidence establishing Wozniak's awareness of the § 409(9) requirement. It did not, for example, adduce evidence that, during the registration process, Wozniak was notified of his duty to report pre-existing works. *See* 1/18/24 Tr. 32–36 (DC Comics' counsel acknowledging lack of evidence as to manner of Wozniak's registration); Dkt. 66, Ex. F (public catalog filing of copyright registration). DC Comics also notes Wozniak's deposition testimony. Asked, "Do you recall when you filed this [copyright registration], being given an opportunity to disclose any preexisting material?" Wozniak answered: "Yes, I do believe that's a question." Wozniak Dep. at 39–40. Although assisting DC Comics' claim, that response falls short of conclusively demonstrating Wozniak's appreciation in real time that he was legally obliged to report preexisting work. A jury could find his failure to do so to reflect an inadvertent mistake or a lay person's ignorance as to the meaning, and the application to his Story, of the term "pre-existing material."

Second, DC Comics contends that the evidence establishes that Wozniak knew that he could not use Batman Universe characters and story elements without DC Comics' permission. It points to Wozniak's use of different versions of the Story when he pitched it to other publishers and studios. In these, Wozniak omitted references to Batman and replaced them with different characters. Wozniak. Dep. at 43, 59. DC Comics argues that this demonstrates that Wozniak knew he lacked authority to use DC Comics' pre-existing material, making his failure to report such material to the Copyright Office a deliberate and willful omission. Again, a jury could reasonably so infer. But it could draw a different inference from Wozniak's elimination of Batman references in his pitches to others, for example, that he believed those publishers were not interested in Batman stories. *See* Wozniak Dep. at 43 (testifying that in 1993 he pitched a version of the Story to Jim Valentino at Image Comics, in which he "name swap[ed]" Batman for "Shadow Hawk," an Image Comics character).

As to this point, DC Comics also notes the contracts it signed with Wozniak in the 1990s, under which Wozniak was paid for his artwork. DC Comics contends that, in those contracts, Wozniak acknowledged that "all Batman material was owned by DC Comics, that he had no right to lay claim or use those materials without written consent (which he did not receive), and that the Story was an unauthorized derivative." Pl. Mem. at 22. But the contracts, signed in 1991 and 1992, address a narrower issue, relating to the *artwork* that Wozniak created and sold to DC Comics. In relevant part, referring to Wozniak as the "Artist," they state:

> Artist acknowledges that the Work shall be derivative of preexisting material, including, without limitation, the name and pictorial and literary representations of fictional characters, companies, places and things (the "Preexisting Material"); that DC owns or otherwise has rights in the Preexisting Material; and that the Artist would be unable to produce the Work without the Preexisting Material. Artist further acknowledges that Artist shall not have, acquire or claim any right whatsoever in any of the Preexisting Material and shall not have the right or

>   privilege to use any of the Preexisting Material except as provided herein or as DC
>   otherwise consents in writing.

Weinberger Decl., Ex. C (contract signed on September 20, 1991) at 2; Ex. D (contract signed on

December 2, 1992) at 2.  The contracts did not cover the Story, which was never accepted by DC

Comics.  They do not cover creative work that DC Comics did not agree to purchase from

Wozniak.  A jury could discount these contracts on the grounds that they do not establish what

Wozniak's state of mind was 30 years later when he registered the Story with the Copyright

Office, let alone that he grasped the key point: that he had a legal duty to disclose preexisting

material on the application and that, as to the Story, there was such material.

　　　　The Court is, finally, mindful of the challenge presented to a movant who seeks to secure

summary judgment on a claim requiring a showing of an adverse party's state of mind—here, the

deliberate nature of Wozniak's failure to disclose preexisting material underlying the registered

work.  *See Shady Recs., Inc. v. Source Enters., Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920, at

*8 (S.D.N.Y. Jan. 3, 2005) ("Neither innocent misstatements, nor deliberate, but nonmaterial

misstatements" count.).  As the case law reflects, courts should hesitate to enter summary

judgment, save where no reasonable jury could fail to find that the party acted with a culpable

state of mind.  *See, e.g., Golden Budha Corp. v. Canadian Land Co. of Am.*, 931 F.2d 196, 201–

02 (2d Cir. 1991) ("Ordinarily, the issue of fraudulent intent cannot be resolved on a motion for

summary judgment, being a factual question involving the parties' states of mind."); *Santrayall*

*v. Burrell*, 993 F. Supp. 173, 176 (S.D.N.Y. 1998) ("At this point, there simply is not sufficient

evidence to state as a matter of law that plaintiffs' failures have sufficient scienter to rise to the

level of 'deliberate misrepresentation.'"); *Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F. Supp.

2d 439, 443 (S.D.N.Y. 1998) (inappropriate to grant summary judgment where "there is no

evidence that [plaintiff's] failure to inform the Copyright Office of the work's derivative nature

was motivated by scienter rising to the level of deliberate misrepresentation"); *cf. Sec. & Exch. Comm'n v. AT&T, Inc.*, 626 F. Supp. 3d 703, 781 (S.D.N.Y. 2022) ("In sum, a jury could find for either side on scienter. That precludes entry of summary judgment in favor of the SEC on its claims."). The evidence DC Comics marshals, although sufficient to support a verdict in its favor, is insufficiently conclusive to compel entry of summary judgment on its claim of deliberate fraud on the Copyright Office.

The Court accordingly denies DC Comics' motion for summary judgment on this claim.

## C. Wozniak's Claims Against Warner Brothers

Warner Brothers moves for summary judgment on Wozniak's claims of copyright infringement. It contends that there are no genuine issues of material fact, as Wozniak cannot establish the required elements of such a claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir. 1996) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Court reviews the evidence as to these elements in turn.

### 1. Ownership of a Valid Copyright

As reviewed above, a "certificate of registration" from the Copyright Office within five years of first publication of a work creates a rebuttable presumption of validity of the copyright, and "the party challenging the validity of the copyright has the burden to prove the contrary." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). But "[w]here registration has been made more than five years after first publication of the work, the evidentiary weight to be accorded the certificate of a registration is within the discretion of the court." *Lavender*, 319 F. Supp. 3d at 669 (citing 17 U.S.C. § 410(c)).

Wozniak invokes the rebuttable presumption of validity. He cites the certificate of copyright registration that he received from the Copyright Office in August 2022 as evidence that he has a valid copyright in the Story he created in 1990. Compl. ¶ 21; *id.*, Ex. A. But Wozniak does not represent that he has ever published the Story, let alone within five years of his copyright registration, as required to trigger the rebuttable presumption. Nonetheless, in evaluating Warner Brothers' summary judgment motion, the Court assumes *arguendo* that non-movant Wozniak's registration certificate is *prima facie* evidence of his copyright's validity, and treats the burden as having shifted to Warner Brothers to rebut the presumption that Wozniak owns a valid copyright to the Story.

To do so, Warner Brothers argues that Wozniak's copyright registration is invalid because the Story uses protected elements of the Batman Universe within the scope of DC Comics' valid copyrights, without DC Comics' permission. In other words, Warner Brothers argues that the undisputed material facts establish that the Story is an unauthorized derivative work that by definition is not entitled to copyright protection. Warner Brothers is correct.

The Copyright Act principally offers copyright protection for "original works of authorship." 17 U.S.C. § 102(a). The term "original" means that "the work was independently created by the author, rather than copied from other works, and that it possesses a modicum of creativity." *Earth Flag Ltd. v. Alamo Flag Co.*, 153 F. Supp. 2d 349, 353 (S.D.N.Y. 2001). The Act also offers copyright protection to derivative works, which are defined as "work[s] based upon one or more preexisting works." 17 U.S.C. § 101; *see also Dynamic Sols., Inc. v. Plan. & Control, Inc.*, 646 F. Supp. 1329, 1340 (S.D.N.Y. 1986). But the protection of derivative works is limited by the following principles. Copyright protection "extends only to the non-trivial, original contributions of the derivative work's author." *Earth Flag*, 153 F. Supp. 2d at 353

(citing 17 U.S.C. § 103(b)). "[C]opyright protection does not extend to any part of the derivative work in which pre-existing material was used unlawfully—for example, if the copyrighted portions of the pre-existing work were used without the owner's permission." *Dynamic Sols.*, 646 F. Supp. at 1340. And "if the pre-existing material used without permission 'tends to pervade the entire derivative work,' copyright protection is denied to the derivative work entirely." *Id.* (quoting Nimmer on Copyright, §306, at 3–22.2 (1985)). *See* 17 U.S.C. § 103(a) ("[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully."); *id.* § 103(b) ("The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work[.]").

These principles are decisive here. By Wozniak's own account, the Story represents his "reimagining of the Batman universe." Wozniak Dep. at 41. He thus all but admits that the Story is a derivative work—"a work based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" the preexisting work. 17 U.S.C. § 101 (defining "derivative work"); *cf. Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 538 (S.D.N.Y. 2008) ("A work is not derivative, however, simply because it is 'based upon' the preexisting works. . . . The statutory language seeks to protect works that are 'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship.'" (citations omitted)).

As such, given DC Comics' valid copyrights with respect to the Batman character and the various protected elements within the Batman Universe, copyright protection for Wozniak's Story cannot "extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. § 103(a). And "*unauthorized* derivative works are typically afforded no copyright

protection because they unlawfully infringe the exclusive rights of the original author." *Keeling v. Hars*, 809 F.3d 43, 48 (2d Cir. 2015). As reviewed above in connection with the finding that Wozniak infringed on DC Comics' copyrights in reproducing the Story for submission to the Copyright Office, Wozniak did not obtain DC Comics' permission to use Batman, or any of the other characters and elements of the Batman Universe over which DC Comics enjoys copyright protection. The Story's use of the Batman character and the surrounding protected elements is an act of clear and blatant copyright infringement.

These protected elements cannot be treated as secondary. On the contrary, the pre-existing copyrighted material that Wozniak used without permission "pervade[s] the entire [Story]." *Dynamic Sols.*, 646 F. Supp. at 1340. The Story's entire premise and plot centers on Batman. The Story follows Batman as he struggles to vanquish the Riddler in Gotham City. The hero (Batman) and the villain (the Riddler) are quintessential elements of the Batman story. The same is so for almost every other character that appears in Wozniak's work: Bruce Wayne, the Riddler, Commissioner Gordon, Barbara Gordon, Harley Quinn, Alfred the Butler, and the Joker. These characters are recurrent figures in DC Comics' Batman oeuvre. And the relationships among them, as drawn by Wozniak, track those in these protected works. For example, just as in DC Comics' works, in the Story, Alfred Pennyworth serves as Bruce Wayne's dutiful butler. *See* Story at 1–3. The Story is set in Gotham City, with Bruce Wayne and Alfred living in Wayne Manor. And the Batmobile, the Batcave, the Batcomputer, and Batman's caped costume and cowl, feature in the Story. *See Am. Broad. Cos.*, 720 F.2d at 241 ("In determining whether a character in a second work infringes a cartoon character, courts have generally considered not only the visual resemblance but also the totality of the characters' attributes and traits.").

Warner Brothers thus has rebutted the presumption of a valid copyright. The undisputed evidence—the content of the Story, measured against DC Comics' copyrights—demonstrates that the Story is an unauthorized derivative work not entitled to copyright protection. *See, Sapon*, 2002 WL 485730, at *6 (finding that "the Black Bat is an unauthorized derivative work, a fact not disclosed to the Copyright Office," and citing this as a reason why the presumption of validity based on registration was rebutted); *Colting*, 270 F. Supp. 3d at 748 (finding four guides derivative works because "they are primarily dedicated to retelling plaintiffs' stories").

### 2.  Unauthorized Copying

Even if Wozniak had a valid copyright registration for the Story, summary judgment would still be in order for Warner Brothers. That is because, based on the undisputed facts, Warner Brothers did not copy the Story in developing the movie *The Batman*, let alone do so without authorization.

To demonstrate unauthorized copying, "a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Jorgensen*, 351 F.3d at 51. Absent direct evidence of copying, a plaintiff can prove this element "indirectly by demonstrating access and substantial similarity." *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 498 (S.D.N.Y. 2018). A defendant "may rebut a prima facie case of infringement by introducing evidence of independent creation." *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 439 (S.D.N.Y. 2011), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012).

Wozniak has not adduced any direct evidence of actual copying. The Court therefore considers whether Warner Brothers had access to the Story and whether there is a "substantial similarity" between the two works.

a. *Access*

Wozniak contends that Warner Brothers had access to the Story based on his testimony that he provided copies of it in the early 1990s to DC Comics editors, and a copy of it in 2008 to Uslan. A court can infer access "from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work." *Boisson*, 273 F.3d at 270. But "a reasonable possibility" is not simply a "bare possibility"; "access cannot be based on mere speculation or conjecture." *Jorgensen*, 351 F.3d at 51 (internal quotations omitted). Instead, the claimant alleging infringement must present "significant, affirmative and probative evidence" to support a claim of access. *Id.*; *see Muller*, 794 F. Supp. 2d at 442 ("conclusory and conjectural assertions" of "bare corporate receipt" of the copyrighted work fail on summary judgment).

On Warner Brothers' summary judgment motion, the Court credits non-movant Wozniak's testimony that he gave copies of the Story to the people identified above. But his evidence falls short of the governing standard. That DC Comics' executives had access to the Story in the early 1990s, when Wozniak first pitched it, does not supply "ample evidence" that *Warner Brothers* had access to the Story in or around 2017, as *The Batman* was being developed. Wozniak's theory presupposes that DC Comics, to which Wozniak pitched his story in the 1990s as a premise for a comic book, furnished the Story to Warner Brothers, where, a quarter-century later, it came into the hands of people involved in creating and producing *The Batman* movie. His theory then presupposes that Warner Brothers shared the Story with Reeves, Tomlin, and Craig, who undisputedly wrote *The Batman* screenplay.

This chain of events leading to access is metaphysically possible, but no more than that. It is wholly speculative. And it is inconsistent with, and made yet more improbable by, record evidence that Wozniak does not refute. Copies of the Story were not found at Warner Brothers

(or DC Comics).  And Reeves, who undisputedly was hired to write and direct the Batman, JSF ¶ 7, refuted Wozniak's theory.  He attests that he never saw or heard of the Story, and had not heard of Wozniak, before writing *The Batman*.  He attests that he conceived of the plot of *The Batman* on his own.  He further attests that he did not have any contact with personnel from DC Comics while writing the screenplay and that DC Comics did not "contribute any creative material to the screenplay."  Reeves Decl. ¶ 12.  According to Warner Brothers, too, Reeves's contact with it during the writing and production of *The Batman* was minimal.  Nong Decl. ¶¶ 7–8.  The studio provided feedback on how to refine particular scenes, but its proposed edits did not alter the "basic plot and storyline for the screenplay."  *Id.* ¶ 7.

Wozniak alternatively posits that Uslan had access to the Story, in that Wozniak claims to have submitted it to Uslan in 2008.  But Wozniak has not adduced evidence that Uslan, a decade later, had any actual role in drafting the screenplay or in developing or producing the movie.  The undisputed evidence is that he did not.  Nong Decl. ¶ 11.  The undisputed evidence is that he is identified as an executive producer as a result of a long-ago (1988) agreement between him and Warner Brothers that required that he thereafter be credited as an executive producer on any film including Batman characters.  *Id.* ¶ 9.

Moreover, although DC Comics does not dispute that freelancer Wozniak submitted stories to DC Comics, and cannot refute Wozniak's claim that the Story was one of these, JSF ¶ 9, no evidence has been adduced that anyone at DC Comics read the Story, discussed the Story, retained the Story, or took any step to furnish the Story to Warner Brothers.  Pl. 56.1 ¶¶ 17–20; Def. 56.1 ¶¶ 17–20.

In these circumstances, Wozniak's theory of access by Warner Brothers is just that—an unsubstantiated theory.  A jury could find such access only based on speculation.  Wozniak thus

has not adduced evidence giving rise to a genuine issue of fact with respect to this required element. *See, e.g., Muller*, 794 F. Supp. 2d at 442 (plaintiff failed to raise genuine issue of fact regarding access where he made only broad accusations that the defendant received or read the alleged infringing work); *Novak v. Nat'l Broad. Co.*, 752 F. Supp. 164, 168 (S.D.N.Y. 1990) (access requires something beyond a bare possibility).  DC Comics' mere possession of the Story, more than a quarter century before Warner Brothers' writers created *The Batman*, is insufficient to support a finding of access. *See, e.g., Jorgensen*, 351 F.3d at 48 ("[E]vidence of corporate receipt of unsolicited work is insufficient to raise a triable issue of access where there is no evidence of any connection between the individual recipients of the protected work and the alleged infringer."); *Tomasini v. Walt Disney Co.*, 84 F. Supp. 2d 516, 522 (S.D.N.Y. 2000) ("unsubstantiated speculation" that plaintiff's work reached alleged infringer through chain of personal contacts insufficient to establish access); *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1252 (11th Cir. 1999) ("[A]n inference of access based on a third party's possession of the plaintiff's work requires more than a mere allegation that someone known to the defendant possessed the work in question." (internal quotation marks omitted)).

Wozniak thus has not adduced "significant, affirmative and probative" evidence of access.  His infringement claim fails on that ground alone. *Jorgensen*, 351 F.3d at 51.

### b.  Substantial Similarity

Works are substantially similar where they would "cause an average lay observer to recognize the alleged copy as having been appropriated from the copyrighted work." *Muller*, 794 F. Supp. 2d at 439 (internal quotation marks omitted).  "[I]t is essential that the similarity relate to copyrightable material." *Id.* at 440.  "[W]hen similar works resemble each other only in

unprotected aspects—for example, when similarities inhere in ideas, which are by definition

unprotected, or in expression that is not proprietary to plaintiff—defendant prevails." *Id.*

In light of the determination above that the Story unlawfully used DC Comics'

preexisting copyrighted material, to assess his claim of substantial similarity between the Story

and Warner Brothers' *The Batman*, the Court must first "extract the unprotectible elements from

[its] consideration." *Warner v. Amazon.com, Inc.*, 22 Civ. 05907 (ALC), 2023 WL 6317954, at

*9 (S.D.N.Y. Sept. 28, 2023) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d

Cir. 1995)). Thus, the Court considers parts of the Story that do not reference Batman,

characters from the Batman Universe, or well-delineated elements of the Batman Universe.

That exercise vastly limits the range of Wozniak's potentially viable claims. He claims

to have "identified . . . dozens and dozens" of similarities between the two works. Pl. Br. at 22.

But of these, only four ostensible similarities do not depend on protected Batman elements. *Id.*

at 22–23.[14] The Court addresses these in turn.

First, Wozniak notes that the Story and *The Batman* both have serial killer villains who

are portrayed as loners. *Id.* at 22. To state the obvious, that is a standard, if not hackneyed,

cinematic and literary trope that cannot support a claim of substantial similarity. "[S]tock

themes" "that are commonly linked to a particular genre" and "scènes à faire" consisting of

"incidents, characters or settings which are as a practical matter indispensable, or at least

standard, in the treatment of a given topic" are generally not protected by copyright. *Muller*, 794

---

[14] Examples of claimed similarities that the Court has set aside because they draw upon protected elements include: (1) the Riddler's killing of the District Attorney with a firebomb, Pl. Br at 22; Wozniak Decl. at 7; (2) the Riddler's intimidation of Batman, stating that, "You're part of this too", Pl. Br. at 23; (3) the Riddler's addressing Batman from a holding cell, Wozniak Decl. at 11; (4) the portrait of Gotham City as on the edge of chaos, *id.* at 15; and (5) Commissioner Gordon and Batman's work in tandem to solve a serial killer case, *id.*

F. Supp. 2d at 441. *See, e.g.*, *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 49 (2d Cir. 1986) (finding no similarity despite both works depicting "[a]t the most general level . . . the same story" of "the experiences of policemen battling the hostile environment of the 41st Precinct"); *Littel v. Twentieth Century Fox Film Corp.*, No. 89 Civ. 8526 (DLC), 1995 WL 404939, at *13 (S.D.N.Y. July 7, 1995) (finding that two works containing vicious villains that kill humans in a gory manner is a "commonality . . . shared with countless hordes of villains"); *Sinicola v. Warner Bros., Inc.*, 948 F. Supp. 1176, 1186 (E.D.N.Y. 1976) ("stock theme" of a villain who commits a homicide only to be pursued by a close friend of the victim is a "level of abstraction" not protected by copyright law). That both works at issue draw upon the familiar archetype of a loner serial killer villain does not support a claim of substantial similarity.[15] *See Reyher v. Child.'s Television Workshop*, 533 F.2d 87, 92–93 (2d Cir. 1976) ("Since both [works] present only the same idea, no infringement as to protected expression occurred.").

Second, Wozniak notes that the villain in both works attempts to gain revenge on society by bringing about its catastrophic destruction. Pl. Br. at 22. That, too, is a common plot feature in modern movies, blocking Wozniak's claim.[16] *See Reyher*, 533 F.2d at 91 (similarities in

---

[15] For examples of modern films depicting loner serial killers, *see, e.g.*, *The Silence of the Lambs* (Orion Pictures 1991) (Buffalo Bill); *Se7en* (New Line Cinema 1995) (John Doe); *The House that Jack Built* (Zentropa Entertainments 2018) (Jack); *Psycho* (Universal pictures 1960) (Norman Bates); and *Tightrope* (Warner Brothers 1984) (Leander Rolfe).

[16] For examples of modern films with villains who act with the goal of destroying humankind, *see* numerous James Bond movies, including *No Time to Die* (Universal Pictures 2021) (Safin plans to release biological weapon capable of eradicating the human race); *Moonraker* (United Artists 1979) (Drax plans to destroy humanity by dispersing nerve gas into the Earth's atmosphere); and *You Only Live Twice* (United Artists 1967) (Blofeld plans to capture both American and Soviet spacecraft to trigger a nuclear war between the two); *see also* *Austin Powers: The Spy Who Shagged Me* (New Line Cinema 1999) (Dr. Evil announces he will hold the world ransom by threatening to destroy cities using a laser located on the moon); *Terminator 2: Judgment Day* (Tri-Star Pictures 1991) (artificial intelligence Skynet attempts to initiate a nuclear holocaust to wipe out humanity); and *12 Monkeys* (Universal Pictures 1995) (a

"more or less stereotyped form" that result from a common idea "preclude a finding of

actionable similarity" (citation omitted)).  And the villain's chosen mode of destruction differs

between the Story and *The Batman*.  In the Story, the Riddler helps spread a lethal virus.

Weinberger Decl., Ex. E at 12–13.  In *The Batman*, a flood threatens the safety of Gotham.

Reeves Decl. ¶ 14.  The plots can be depicted as similar only at a very general level of

abstraction.  *See Jones v. CBS, Inc.*, 733 F. Supp. 748, 754 (S.D.N.Y. 1990) ("These plots or

storylines are clearly different.  Only by reducing them to a common idea . . . can one find

similarity. That common idea is not copyrightable."); *Price v. Fox Enter. Group, Inc.*, 499 F.

Supp. 2d 382, 388 (S.D.N.Y. 2007) (despite works' shared focus on the sport of dodgeball, the

"sufficient dissimilarities" in how the sport was portrayed in the works at issue prevented finding

of similarity).  "[N]o reasonable observer could find the [works here] substantially similar

beyond the level of generalized . . . ideas." *Walker*, 784 F.2d at 49.

   Third, Wozniak notes that both works include a villain who taunts pursuers by leaving a

series of "clues and riddles" that bring about plot twists and unexpected revelations.  Pl. Br. at

23.  That plot feature, too, is unremarkable.  The trope in which a villain leaves devilish clues

and riddles for a hero to follow is by now quotidian.  It is in fact inherent in the Batman character

of The Riddler.[17]  "[B]asic plot ideas" such as the presentation of puzzling clues leading to plot

---

terrorist group, "Army of the Twelve Monkeys," is believed to have released a deadly virus
capable of wiping out humankind).

[17] For examples of modern films and television shows in which villains leave clues and riddles
for pursuers to follow, *see, e.g.*, *Se7en* (New Line Cinema 1995) (John Doe leaves clues at
scenes of his murders for detectives to find); *Sherlock* (BBC 2010) (Moriarty leaves clues and
riddles for Sherlock Holmes); *Zodiac* (Warner Brothers 2007) (Zodiac killer leaves cryptic
messages, cyphers, and menacing phone calls); *Die Hard with a Vengeance* (20th Century Fox
1995) ("Simon" calls New York City Police Department threatening to detonate bombs in New
York City public school unless Detective Lieutenant John McClane can solve Simon's timed
challenges); *The ABC Murders* (Mammoth Screen 2018) (in movie based on Agatha Christie

twists and revelations of identity are not protectible in copyright. *Jones*, 733 F. Supp. at 754; *see, e.g.*, *Hallford v. Fox. Enter. Grp.*, No. 12 Civ. 1806 (WHP), 2013 WL 541370, at *1–3 (S.D.N.Y. Feb. 13, 2013) (finding no substantial similarity between a work involving "an investigative journalist who . . . solves a mystery" and a work depicting the protagonist's attempts to decipher clues). This plot feature is recurrent in the genres of murder mysteries, cop-and-robber thrillers, and detective stories. And Wozniak does not isolate more specific commonalities. *See, e.g.*, *Walker*, 784 F.2d at 49 (similar crime-scene vignettes in larger narrative too general to make works substantially similar); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 313 (S.D.N.Y. 1999) (bloody murder with symbolic religious subtext a "standard" feature; presence of recurrent and predictable plot points insufficient to give rise to dispute of fact as to element of substantial similarity); *Mena v. Fox Enter. Grp.*, No. 11 Civ. 5501 (BSJ) (RLE), 2012 WL 4741389, at *1 (S.D.N.Y. Sept. 29, 2012) (fact that allegedly infringing work and copyright work both included "murder victims who have been reincarnated following their deaths but retain fragmented memories that hold elusive clues to the identity of their killers" insufficient to give rise to finding of substantial similarity).

Fourth, Wozniak notes that the Story and *The Batman* each contain a "moment of clarity or epiphany" for the villain that propels him to follow a path of crime aimed at "unmask[ing] the truth" for society. Pl. Br. at 23. This thematic concept again is too familiar to support, without more, a finding of substantial similarity.[18] "The essence of infringement lies in taking not a

---

novel of the same name, "A.B.C." sends letters to Detective Poirot detailing crimes to be committed in near future).

[18] For examples of modern films and television shows in which an epiphany turns a villain towards a life of crime, *see, e.g.*, *The Incredibles* (Walt Disney Pictures 2004) (Syndrome begins as huge fan of Mr. Incredible, but after repeated rejection, turns on his former idol, seeking revenge); *Star Wars: Episode III–Revenge of the Sith* (20th Century Fox 2005) (Anakin

general theme but its particular expression through similarities of treatment, details, scenes,
events and characterization." *Brown v. Perdue*, No. 04 Civ. 7417 (GBD), 2005 WL 1863673, at
*9 (S.D.N.Y. Aug. 4, 2005), *aff'd*, 177 F. App'x 121 (2d Cir. 2006).  As to this trope, too,
Wozniak does not pinpoint more specific plot features common to the works.

    A reasonable finder of fact thus could not find the works at issue substantially similar.[19]
That, too, precludes Wozniak's copyright infringement claim.  *See, e.g., Crane v. Poetic Prod.
Ltd.*, 593 F. Supp. 2d 585, 591 (S.D.N.Y.), *aff'd*, 351 F. App'x 516 (2d Cir. 2009) (although
"summary judgment has traditionally been frowned upon in copyright litigation," finding it
warranted because "no reasonable trier of fact could find the works substantially similar");
*Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 577 (S.D.N.Y. 2009) (entering
summary judgment for defendants based on finding of no substantial similarity; "[a]though both
works convey a similar, upbeat mood through the depictions of happy children engaged in play .
. ., an upbeat mood is to be expected from works geared toward children"); *Williams v.
Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (affirming grant of summary judgment for defendants;
court finds *Dinosaur World* books and *Jurassic Park* not substantially similar because "nearly all
the similarities between the works arise from noncopyrightable elements"); *Porto v. Guirgis*, 659

---

Skywalker gets lured to the dark side of the Force and transforms into Darth Vader); *Cruella*
(Walt Disney Pictures 2021) (Cruella Devil/Estella discovers that the Baroness caused her dogs
to kill her mother, Catherine, after which she pivots to seek revenge); *Breaking Bad* (American
Movie Classics 2008) (high school chemistry teacher Walter White transforms into ruthless drug
kingpin, driven to provide for his family financially after being diagnosed with lung cancer).

[19] Because the works are not substantially similar, they necessarily cannot be found "strikingly
similar," a showing that would obviate the need to demonstrate access.  *Muller*, 794 F. Supp. 2d
at 439, 444 ("striking similarity" can only be found where "creation of one is so dependent on
the other as to preclude possibility of independent creation," and "[t]he mere existence of
multiple similarities is insufficient to meet the test [for striking similarity].").  Wozniak does
not—and could not credibly—claim striking similarity here.

F. Supp. 2d 597, 610–11 (S.D.N.Y. 2009) (granting summary judgment for defendant; court finds no substantial similarity even though "[b]oth works are a fictional account of a modern trial of Judas Iscariot, ordered by God, to determine the fate of his soul" because many of the alleged similar elements, like "Judas standing trial," were unprotectible ideas).

### c. *Independent Creation*

Warner Brothers also argues that summary judgment is warranted on the ground that the evidence establishes that it created *The Batman* independent of Wozniak's Story. "Independent creation is an affirmative defense, evidence of which may be introduced to rebut a prima facie case of infringement." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). "Strong, convincing, and persuasive evidence of independent creation is required, in order to avoid relying solely on the affidavits of the parties." *Webb v. Stallone*, 910 F. Supp. 2d 681, 685 (S.D.N.Y. 2012), *aff'd on other grounds*, 555 F. App'x 31 (2d Cir. 2014) (internal quotation marks omitted).

Warner Brothers has come forward with substantial evidence of its independent creation of *The Batman*. This predominantly consists of declarations from Reeves and Warner Brothers' executives. However, because summary judgment for Warner Brothers is warranted on other grounds, such that Wozniak cannot establish a *prima facie* case of infringement, the Court does not have occasion to resolve whether the evidence would also oblige a finder of fact to find for Warner Brothers on this defense. The decision not to resolve this issue is without prejudice to Warner Brother' right to move anew on this ground should circumstances change.

The Court accordingly enters summary judgment in favor of Warner Brothers on Wozniak's copyright infringement claims.

## CONCLUSION

For the foregoing reasons, the Court grants Warner Brothers' summary judgment motion in full, and DC Comics' motion for summary judgment on its copyright infringement claim.  The Court denies DC Comics' motion for summary judgment on its copyright fraud claim.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket 59.

An order as to next steps in this case will follow shortly.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated   March 27, 2024
        New York, New York